UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA

VS.                                            No. 4:21CR00306-001-BSM

BYRON LEE

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO
OBJECTIONS TO THE PRESENTECE REPORT and
DEFENDANT'S AMENDED OBJECTIONS TO PRE-SENTENCE REPORT**

Comes now the Defendant, Byron Lee, and for his reply to the government's

response, and for his amended objections to the Pre Sentence Report states:

**INTRODUCTION**

The presentence report in this case found defendant subject to the enhanced

sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e).

Defendant concedes paragraph 29 of the PSR concerning the Residential

Burglary conviction in violation of Arkansas Code Annotated § 5-39-201, in Pope

County, Arkansas, Circuit Court in Case Number 58CR-14-319.  (Exhibit 1)

The following two convictions are at issue:

PSR Paragraph 45 - Possession of Methamphetamine or Cocaine with

Purpose to Deliver, a violation of Arkansas Code Annotated § 5-64-420(b)(1), in

Pope County, Arkansas, Circuit Court in Case Number 58CR-18-413 (See PSR

and Exhibit 2); and

PSR Paragraph 46 - Possession of Methamphetamine or Cocaine with Purpose to Deliver, a violation of Arkansas Code Annotated § 5-64- 420(b)(1), in Johnson County, Arkansas, Circuit Court in Case Number 36CR-18-358 (See PSR and Exhibit 3).

Paragraphs 45 and 46 of the PSR are incorrectly described by both the PSR writer and the Government as Possession of Methamphetamine…, they are actually convictions of Arkansas Code § 5-64-420 for Possession of Methamphetamine or Cocaine With the Purpose to Deliver. This offense is commonly referred to as "Possession with Purpose to Deliver". See, Informations and Judgments of Convictions. (Exhibit 2 & 3).

Defendant amends his objections to PSR to include both paragraph 45 and 46 of the PSR as neither conviction qualifies as a serious drug offense and as both are improper predicates for the Armed Career Criminal Act.

The government acknowledges in it's response that the Eighth Circuit's holding in *United States v. Perez*, 46 F.4th 691, 698 (8th Cir. 2022) is binding until the Eighth Circuit or the Supreme Court says otherwise. See, Government's response page 9 footnote 1. Based on the Eighth Circuit's holdings in *Perez*, as well as the rational in the recent Eighth Circuit decisions of *Myers*, *and Owen*, this court should find that neither of the Defendant's Arkansas convictions under ACA § 5-64-420 are not proper predicates for the ACCA.

**Determining Whether a State Conviction Qualifies as a Serious Drug Offense Under Armed Career Criminal Act (ACCA)**

A defendant convicted of unlawful possession of a firearm under 18 U.S.C. § 922(g) who has three prior convictions for violent felonies and/or serious drug offenses faces a mandatory minimum sentence of 15 years. See 18 U.S.C. § 924(e). In determining whether a prior state law offense is a qualifying conviction under the ACCA, this Court applies the "well-traveled" categorical approach, "an analysis that focuses on the statutory elements of the offense rather than the particular facts underlying the defendant's prior conviction." *United States v. Witherspoon*, 974 F.3d 876, 879 (8th Cir. 2020).

Under the categorical approach, the burden is on the government to prove that the prior conviction is a qualifying offense under the ACCA. *United States v. Clark*, 1 F.4th 632, 635 (8th Cir. 2021). The Supreme Court has made it clear that the government's burden at sentencing is strenuous under the ACCA to "condemn someone to prison for 15 years to life." *Johnson v. United States*, 576 U.S. 591, 602 (2015); *see also Borden v. United States*, 141 S. Ct. 1817, 1822 (2021).

To qualify as a "serious drug offense," the defendant's state conviction must "'involv[e] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance' that is listed on the federal controlled substances schedules." *United States v. Oliver,* 987 F.3d 796, 804 (8th Cir. 2021), quoting 18 U.S.C. § 924(e)(2); *see also United States v. Vanoy*, 957 F.3d 865, 867 (8th Cir.

2020). Both *Oliver* and *Vanoy* concluded that "[i]f the state offense sweeps more broadly, or punishes more conduct than the federal definition, the conviction does not qualify as a predicate offense." *Id.*; citing *Shular v. United States*, 140 S.Ct. 779, 782 (2020).

The "first step" in the analysis "is to determine whether to apply the categorical or modified categorical approach." *United States v. Ossana*, 638 F.3d 895, 899 (8th Cir. 2011). If the statute underlying the predicate conviction "creates a single crime by listing a single set of elements," it is indivisible, and we follow the categorical approach, looking to the elements of the offense "rather than the defendant's actual conduct" … Sometimes, a statute may seem divisible because it lists alternatives, but in fact it is indivisible because those alternatives "are not alternative elements, going toward the creation of separate crimes" but are simply "alternative ways" or "means" of "satisfying a single ... element*." Mathis v. United States,* 579 U.S. 500, 136 S.Ct. 2243, 2250 (2016).

As recently explained by the Eighth Circuit in *Owen*, when "a statute lays out a single crime with a single set of elements .... a so-called "indivisible" statute, we simply check to see if it "criminalizes a broader swath of conduct" than the generic offense or federal definition, whichever happens to apply. The task becomes more difficult, however, if a statute is "divisible," meaning it defines "multiple crimes by listing more than one set of elements." Divisible statutes call

for a modified categorical approach, which involves peeking at certain documents to identify "what crime, with what elements, a defendant was convicted of." *Mathis v. United States*, 579 U.S. 500, 505–06, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016) (listing documents included in this "limited class"—otherwise known as *Shepard* documents— "the indictment, jury instructions, or plea agreement and colloquy").   Then, once we identify the specific crime, we determine whether it reaches "more conduct than the federal definition".   If the answer is yes, the conviction does not count under ACCA."  *United States v. Owen*, 51 F.4th 292, 294–95 (8th Cir. 2022), reh'g denied, No. 21-3870, 2022 WL 17840559 (8th Cir. Dec. 22, 2022). (Internal citations omitted).

Under the categorical approach, courts look solely to whether the elements of the crime of conviction match the elements of the federal recidivism statute. *Id*. at 501. "If, and only if, the elements of the state law *mirror* or are *narrower* than the federal statute can the prior conviction qualify as a predicate felony drug offense." Citing *De La Torre*, 940 F.3d 938, 948.  *United States v. Ruth*, 966 F.3d 642, 646 (7th Cir. 2020).(emphasis added).

As recently found by the 8th Circuit in *United States v. Myers*, No. 21-3443, 2022 WL 17984279,  (8th Cir. Dec. 29, 2022):

> … a prior state drug conviction is a predicate offense for purposes of
> the ACCA only if the state offense involved a "controlled substance"
> as that term is defined under federal law…Where "the state offense
> sweeps more broadly, or punishes more conduct than the federal

definition, the conviction does not qualify as a predicate offense."
United States v. Vanoy, 957 F.3d 865, 867 (8th Cir. 2020).

*United States v. Myers*, No. 21-3443, 2022 WL 17984279, at *1–2 (8th Cir. Dec. 29, 2022).

**ACA §5-64-420 is overly broad and it is not Divisible by the type of Controlled Substance.  The type of the controlled substance is a *means* of committing the offen*se*, not an *element* of the Arkansas offense.**

ACA §5-64-420 is a single crime and is not divisible by the type of

controlled substance.  The type of the controlled substances are not *elements* of the

offense, but are alternative *means* of committing the same offense.

ACA § 5-64-420. Possession of methamphetamine or cocaine with the purpose to deliver, provides:

- (a) Except as provided by this chapter, it is unlawful if a person possesses methamphetamine or cocaine with the purpose to deliver the methamphetamine or cocaine. Purpose to deliver may be shown by any of the following factors:
    - o (1) The person possesses the means to weigh, separate, or package methamphetamine or cocaine;
    - o (2) The person possesses a record indicating a drug-related transaction;
    - o (3) The methamphetamine or cocaine is separated and packaged in a manner to facilitate delivery;
    - o (4) The person possesses a firearm that is in the immediate physical control of the person at the time of the possession of methamphetamine or cocaine;
    - o (5) The person possesses at least two (2) other controlled substances in any amount; or
    - o (6) Other relevant and admissible evidence that contributes to the proof that a person's purpose was to deliver methamphetamine or cocaine.

- (b) A person who violates this section upon conviction is guilty of a:

- ○ (1) Class C felony if the person possessed less than two grams (2g) of methamphetamine or cocaine by aggregate weight, including an adulterant or diluent;
- ○ (2) Class B felony if the person possessed two grams (2g) or more but less than ten grams (10g) of methamphetamine or cocaine by aggregate weight, including an adulterant or diluent; or
- ○ (3) Class A felony if the person possessed ten grams (10g) or more but less than two hundred grams (200g) of methamphetamine or cocaine by aggregate weight, including an adulterant or diluent.
- ○ ACA 5-64-420 (2018).
- ○

In *Cokeley v. State,* 288 Ark. 349, 351, 705 S.W.2d 425, 426 (1986) the

Arkansas Supreme found that rape by sexual intercourse and rape by deviate

sexual activity are same crime and involve the same elements of proof under the

Arkansas Rape statute.  The issue in *Cokeley* was whether it is error to instruct the

jury that rape can be committed by engaging in sexual intercourse or deviate sexual

activity when only sexual intercourse is charged.   The Arkansas Supreme Court

found that the statute itself set forth the elements of the crime of rape:

> (1) A person commits rape if he engages in sexual intercourse or
> deviate sexual activity with another person:
> (a) by forcible compulsion;

The Arkansas Supreme Court found that the elements of the offense of rape

are; (1) the sexual act, and (2) forcible compulsion. In making this finding, the

Arkansas Supreme Court overruled *Clayborn* which had previously interpreted the

statute to read that the reference to different kinds of sexual acts created two

separate crimes and the essential elements of the crime differ ".  However, *Cokeley*

overruled this holding and held there is only one crime of rape with two possible

*means* of commission.  The Court noted a similar example in a DWI charge:

> … we unanimously held that there is only one offense of driving
> while intoxicated with two ways of violating the act, either by
> operating or controlling a vehicle while intoxicated or operating or
> controlling a vehicle when blood alcohol content is 0.10% or
> more. *Yacono v. State,* 285 Ark. 130, 685 S.W.2d 500 (1985); *Wilson
> v. State,* 285 Ark. 257, 685 S.W.2d 811 (1985). In *Wilson* the
> defendant was charged under one subsection of the act but convicted
> under the other subsection. We said:
>
>> The appellant next argues that he was charged under subsection
>> (b) of the act but was convicted under subsection (a) of the act,
>> and therefore, his conviction must be reversed. Again, the
>> argument is without merit. … *Such a charge is sufficient even
>> though the evidentiary requirements of the subsections are
>> different.* (Italics supplied.)

*Cokeley v. State*, 288 Ark. 349, 352, 705 S.W.2d 425, 426–27 (1986).

See also, *Midgett v. State,* 316 Ark. 553, 873 S.W.2d 165 (1994). Because

"rape" could be committed by either "deviate sexual activity" or by

"sexual intercourse," amending the information charging defendant with rape

by deviate sexual activity to add a charge of rape by sexual intercourse did not the

change nature or degree of crime.  It is noted that the Arkansas Supreme Court

affirmed the convictions in Midgett for *both* rape by deviate sexual activity, and

rape by intercourse.  See also, *Tarry v. State,* 289 Ark. 193, 195, 710 S.W.2d 202,

203 (1986) (Defendant convicted of Rape both by deviate sexual activity, and rape

by sexual intercourse.   Rape is a single crime that may be committed in either of

two ways (internal citation omitted).  Here the prosecutrix testified that she had

been raped in two different ways, and the jury so found by separate verdicts.).

The Government's states "[t]he conclusion that the statute is divisible, and

the modified categorical approach applies, is supported by the fact that a defendant

can be convicted under Arkansas law of separate offenses of possession of cocaine

with the purpose to deliver and also possession of methamphetamine with the

purpose to deliver for possession of such substances on a single occasion." See

Governments Response, Page 8.    However, this conclusion by the government is

in direct contradiction with Arkansas caselaw as *Midgett* and *Tarry* both found that

rape is a single crime which can, and has been committed by the same defendant,

by both means, on the same occasion.

It is notable that the case the government cites to support it's conclusion that

the statute is divisible is an unpublished 1990 opinion.  Unpublished Arkansas

opinions pre-dating 2009 have zero precedential value and are improperly cited,

quoted, or referred to in any argument with extremely rare exception.

> Opinions of the Supreme Court and Court of Appeals issued before
> July 1, 2009, and not designated for publication shall not be cited,
> quoted, or referred to by any court or in any argument, brief, or other
> materials presented to any court (except in continuing or related
> litigation upon an issue such as res judicata, collateral estoppel, or law
> of the case).
> *Rule 5-2 - Opinions*, Ark. R. Sup. Ct. & Ct. App. 5-2

Under the same rational and reasoning used by the Arkansas Supreme Court to interpret Arkansas's Rape and DWI statute in *Cokeley*, it follows that the statute in question, ACA §5-64-420 Possession of a Methamphetamine or Cocaine with the Purpose to Deliver, is but one crime, with two possible *means* of commission, namely, via methamphetamine or via cocaine.

A comparison of the Arkansas jury instructions regarding these offenses is helpful:

AMCI 2d 1401 RAPE
___

*(Defendant)* **is charged with the offense of rape. To sustain this charge the State must prove the following things beyond a reasonable doubt:**

[**First: That(defendant) engaged in** (sexual intercourse) (or) (deviate sexual activity) **with(victim)**; **and**

**Second:** That *(defendant)* did so by forcible compulsion.]

**AMCI 2d 6501DRIVING OR BOATING WHILE INTOXICATED**
___

*(Defendant)* **is charged with the offense of**

[driving] [or] [boating] **while intoxicated. To sustain this charge the** [State] [City] **must prove beyond a reasonable doubt that** *(defendant)*

[, while intoxicated, (operated) (or) (was in actual physical control of) (a motor vehicle) (or) (a motorboat on the waters of this state).]

[or]

[(operated) (or) (was in actual physical control) of (a motor vehicle) (or) (a motorboat on the waters of this state) while the alcohol concentration in his/her

(breath) (or) (blood) was eight-hundredths (0.08) or more as determined by a chemical test of his/her (blood) (urine) (breath)  *(other bodily substance)*].

## AMCI 2d 64.420 POSSESSION OF CONTROLLED SUBSTANCE WITH THE PURPOSE TO DELIVER

**[Act 570]**

*(Defendant(s))* [is] [are] **charged with the offense of possessing** *[insert name of applicable controlled substance]* **with the purpose to deliver it. To sustain this charge the State must prove beyond a reasonable doubt:**

**That** *(defendant(s))* **possessed** *[insert applicable amount and name of substance, see Table in Note on Use]* **with the purpose to deliver it.**

"Purpose to deliver" may be shown by evidence that you find beyond a reasonable doubt proves 's (*Defendant's*) purpose was to deliver *[insert name of applicable controlled substance]*. Evidence which you may consider, along with all the other facts and circumstances of the case, include any of the following factors:

*(Defendant)* possessed the means to weigh, separate, or package *[insert name of applicable controlled substance]*; or

*(Defendant)* possessed a record indicating a drug-related transaction; or

The *[insert name of applicable controlled substance]* was separated and packaged in a manner to facilitate delivery; or

*(Defendant)* possessed a firearm that was in *[his] [or] [her]* immediate physical control at the time of the possession of the  *[insert name of applicable controlled substance]*; or

*(Defendant)* possessed at least two other controlled substances in any amount; or

Other evidence that contributes to prove that 's (*Defendant's*) purpose was to deliver  *[insert name of applicable controlled substance]*.

**[There are two kinds of possession, actual and constructive. Actual possession of a thing is direct physical control over it. Constructive possession exists when a person, although not in actual possession of a thing, has the right to control it and intends to do so, either directly or through another person or**

**persons.** (If two or more persons share actual or constructive possession of a thing, either [or both] may be found to be in possession.)**]**

**Definitions**

"Delivery"—occurs whenever there is an actual (or constructive) or attempted transfer of the substance from one person to another in exchange for money or anything of value.

"Purposely"—A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result.

NOTE ON USE TABLE
[methamphetamine and cocaine]
(1) at least 10 grams but less than 200 grams
(2) at least 2 grams but less than 10 grams
(3) less than 2 grams

Defendant asserts that ACA §5-64-420, Possession of a Methamphetamine or Cocaine with the Purpose to Deliver, is not divisible as to the controlled substance, as they are not alternative *elements* of the offense, but simply alternative *means* of committing the same offense.

As explained in *Mathis*, "Sometimes, a statute may seem divisible because it lists alternatives, but in fact it is indivisible because those alternatives "are not alternative elements, going toward the creation of separate crimes" but are simply "alternative ways" or "means" of "satisfying a single ... element*." Mathis v. United States,* 579 U.S. 500, 136 S.Ct. 2243, 2250 (2016).

No weight should be given to the government's conclusion that the statute is divisible, that the modified approach applies, and that the type of controlled

substance is an element, under a reading of the statute itself, the Arkansas jury instructions, or Arkansas caselaw.  Even the title of the crime suggests the substances are alternative means to satisfy the element.

In *Brown*, the Eighth Circuit also found that separate locations listed in the Missouri second-degree burglary statute under which federal firearms defendant was previously convicted merely provided separate *means* by which defendant could have committed the offense, and did not define separate offenses, some of which were broader than, and some of which were analogous to the generic offense of burglary; because statute was not divisible by location, it was broader than generic offense of burglary, and defendant's prior conviction thereunder was not a prior "violent felony" supporting an enhanced sentence under the Armed Career Criminal Act (ACCA), regardless of the specific means by which defendant committed this offense.  *Brown v. United States*, 929 F.3d 554 (8th Cir. 2019).

Alternatively, and in the event this Court finds ACA §5-64-420 is indeed a divisible statute and that the controlled substances are not alternative *means* of committing the offense, but are alternative *element*s of the offense, (which is not concede) and this court finds PSR Paragraph 45 involves methamphetamine by virtue of modified approach and the charging information, (which alleges 2 grams but less than 10 grams of methamphetamine), an issue still remains with regard the substance was involved in PSR Paragraph 46.

13

Even under the modified approached (which is not conceded as the appropriate approach) it can not be properly ascertained if the controlled substance of conviction in PSR Paragraph 46 is methamphetamine or cocaine. It is noted that when the Court is allowed to "peek at the record documents" it is for "the sole and limited purpose of determining whether the listed items are elements of the offense." *Mathis*.

The government acknowledges that the felony information in case number 36CR-18-358 (PSR Paragraph 46) does not specify whether the controlled substance the defendant possessed with the intent to deliver was cocaine or methamphetamine. The government then concludes that court's "pretrial order" makes it clear that the controlled substance of which he was convicted was indeed methamphetamine. The document the government relies upon is actually an order finding Probable Cause, Determining Indigency, and Setting Pre Trial Release Conditions. (See, Exhibit 3). Clearly, the Probable Cause, Indigency, Conditions of Release Order relied upon by the government is not a permissible *Shepard* document and cannot be used to support a predicate for the ACCA. Moreover, the categorical approach is the correct approach that should be apply in situation, not the modified approach, as the statute is indivisible.

In *United States v. Dittmar*, 897 F.3d 958, 959–61 (8th Cir. 2018), the 8th Circuit found that the district court improperly relied on the "minutes of evidence"

when it applied the modified categorical approach under *Shepard v. United States*,

544 U.S. 13, 23, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).  Dittmar had two prior

convictions under Iowa's arson statute, which defines arson in two subsections.

The district court had applied the modified categorical approach and determined

that Dittmar was convicted of generic arson based on "minutes of evidence of the

witnesses".  Under Iowa law, a prosecution is commenced by filing an information

and the prosecutor must also file "minutes of evidence of the witnesses," which

lists each witness upon whose expected testimony the information is based, and a

full and fair statement of the witness' expected testimony.  The trial court then

examines the information and the "minutes of evidence" to determine whether

there is probable cause to proceed.

The Eighth Circuit found in *Dittmar* that minutes of evidence are *not*

permissible *Shepard* documents if the defendant has not confirmed their accuracy

in a plea agreement or during plea colloquy.   The Eighth Circuit found that the

purpose of the minutes is to allow the trial judge to ascertain whether there is

probable cause to proceed, thus they resemble a complaint application or police

report, which are not permissible *Shepard* documents. *See United States v.

Donnell*, 661 F.3d 890, 894 (4th Cir. 2011) ("The police reports and complaint

applications at issue in *Shepard* are similar to the statement of probable cause at

issue here: Both are used to make an assessment of probable cause and depart from

the certainty of the record of conviction.").   *United States v. Dittmar*, 897 F.3d

958, 959–61 (8th Cir. 2018).

Clearly, the Probable Cause, Determining Indigency, and Setting Pre Trial

Release Conditions order relied upon by the government to support the substance

of conviction in PSR Paragraph 46, is likewise a statement or finding of probable

cause, and it's use impermissibly departs from the *required certainty* of the record

of conviction as explained in *Dittmar*.   Moreover, the government submits no

evidence that the accuracy of this "statement of probable cause" had been

confirmed by the defendant in a plea agreement or during plea colloquy.

Defendant's signature upon the document merely acknowledges his receipt of a

copy the order and an understanding of the conditions of release.  Accordingly*,* the

exhibit upon which the government relies to support its arguments is not a

permissible *Shepard* document under the Eighth Circuit's holding in *Dittmar*.

To the extent the government suggests this Court should review such a

document to determine which controlled substance was involved in Mr. Lee's prior

conviction, that would violate the modified categorical approach and the Sixth

Amendment for two reasons; (1) it is an impermissible *Shepard* document, and (2)

which particular controlled substance was involved is not an element of the

offense, but merely a means of committing the possession with intent to deliver

offense. *See Mathis v. United States*, 136 S. Ct. 2243, 2255-57 (2016). In other

words, an Arkansas jury is not asked to unanimously agree on which controlled substances were involved in offenses.

As the Arkansas Court found in *Cokeley*, it is the "sexual act" that is the element, and the types of sexual acts are alternative *means* of commission. Likewise, it is the "controlled substance" that is the element, and the types of controlled substances are simply "alternative ways" or "means" of "satisfying a single element*." as* was also explained in *Mathis* 136 S.Ct. 2243, 2250.

Moreover, in cases where there is a divisible statute which describes alternate crimes, *only some of which* satisfy the definition of a "violent felony" or "serious drug offense" under the Armed Career Criminal Act (ACCA), the courts in determining whether a prior conviction under that statute is a predicate offense under the ACCA may use a modified categorical approach and examine a limited set of documents which include the charging document, jury instructions, plea agreement, and transcripts of plea colloquies. It is significant in this case, that methamphetamine and cocaine are *both broader* under Arkansas law than under federal law, there simply remains no portion of this particular Arkansas statute ACA §5-64-420, that can properly serve as a serious drug offense predicate for ACCA purposes. Therefore, the sole purpose to employ the modified approached is completely absent in this case. While the government's response refers to other Arkansas delivery statutes, those statutes are not at issue here.

Nevertheless, and under all scenarios, the Arkansas statute in question, ACA §5-64-420, as it pertains to either, or both controlled substances, sweeps more broadly and punishes more conduct than the federal definition of both cocaine and methamphetamine.

**The Realistic Probability Test Does Not Apply pursuant to *Owen***

Next, the government argues the "realistic probability test" relying on *Bragg* which quoted *Gonzales v Duenas-Alvarez*. The government also cites other immigration cases. The "realistic probability" language comes primarily from two Supreme Court cases: *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007), and *Moncrieffe v. Holder*, 569 U.S. 184, 133 S.Ct. 1678, 185 L.Ed.2d 727. Both cases are immigration cases. See, *Gonzalez v. Wilkinson*, 990 F.3d 654, 659 (8th Cir. 2021). The government's reliance on non-ACCA case law from the Eighth Circuit is misguided because it disregards the mandates by the Supreme Court in ACCA cases like *Johnson*, *Shepard*, *Mathis*, and *Borden* that it must do more to satisfy its burden in the context of the ACCA.

The only United States Supreme Court case that has mentioned the "realistic probability" test to the ACCA was analyzing the now void residual clause of the ACCA nearly 15 years ago in a "cf" citation, and has since been overruled. *See James v. United States*, 550 U.S. 192, 208 (2007); *overruled by Johnson v. United States*, 576 U.S. 591 (2015).

The Supreme Court explained why the government's argument is flawed in relying on immigrations cases, that is because immigration cases place the burden on the alien. Specifically, in *Pereida v. Wilkinson*, the Court resolved a circuit split as to whether in the Immigration and Nationality Act ("INA") "Congress meant for any ambiguity about an alien's prior convictions to work against the government, not the alien." 141 S. Ct. 754, 760 (2021). In affirming the Eighth Circuit's approach that placed the burden on the alien, the Supreme Court drew a line in the sand between the ACCA and INA, as to their conflicting purposes and approaches.

Rejecting the argument "that the ACCA and INA have a shared text and purpose", Justice Gorsuch, concluded "the ACCA and INA provision at issue here bear different instructions." *Pereida*, 141 S.Ct. at 766 at fn 7. While "[b]oth may call for the application of the categorical approach . . . the ACCA's categorical approach *demands certainty* from the government, the INA's demands it from the alien." *Id*. (emphasis added).

Justice Gorsuch explained why immigration cases are treated differently than ACCA criminal cases because "[w]hen it comes to civil immigration proceedings, Congress can, and has, allocated the burden differently." *Id*. This is important because while "evidentiary gaps work against the government in criminal cases, they work against the alien seeking relief from a lawful removal order." *Id*.

The Supreme Court further noted that the categorical approach is "confined" in the context of the ACCA because the Court has repeatedly "circumscribed the proof a judge may consult out of concern for the defendant's Sixth Amendment right to a trial by jury." *Id*. at 767; citing *Shepard*, 544 U.S. at 25-26; *Apprendi*, 530 U.S. at 487-490. "But Sixth Amendment concerns are not present in the immigration context." *Id*.

In *Gonzalez*, the Eighth Circuit rejected "[t]he government's [invitation] to conclude that 'realistic probability' means that petitioners must prove through specific convictions that unambiguous laws really mean what they say," instead concluding that, "in applying the categorical approach, state law crimes should be given their plain meaning." *Gonzalez,* 990 F.3d at 660–61.  The Court found this test also at odds with the categorical approach itself, which asks us to focus on the language of the statutory offense, "not the facts underlying the case." The Eighth Circuit Court's analysis in *Gonzalez* relied heavily on ACCA case law to explain why defendants need not identify specific convictions of non-generic conduct because the categorical approach demands a "focus on the elements of a crime, rather than the underlying facts" so "to 'avoid[ ] unfairness to defendants' and petitioners, who 'may have no incentive to contest what does not matter under the law; to the contrary, [they] may have good reason not to.'" *Gonzalez,* 990 F.3d at 661, fn 2, quoting Mathis, 136 S. CT at 2253. Defendants in state court would have

no incentive, and likely no ability, to request a determination of whether" these drugs were of a specific type "since such an inquiry would be irrelevant under [state] law." *Id.*   This analysis likewise applies to Arkansas Code § 5-64-420, because it would be *no* defense in a methamphetamine or cocaine prosecution under ACA § 5-64-420 to maintain that the substance possessed was a particular isomer, because Arkansas law is unambiguous that *all* isomers of cocaine and methamphetamine are illegal.

Additionally, it is submitted that to require the realistic probability test of the defendant, in this situation, amounts to an improper shifting of the burden to the defendant, when it is the government's burden to prove that the prior convictions are a qualifying offenses under the ACCA

The government's assertion that the "realistic probability test" applies is incorrect.  The Eighth Circuit in *Owens* when consider this very same issue held:

> the government's argument cannot succeed because the realistic-probability test is about resolving ambiguities. *See Gonzalez v. Wilkinson*, 990 F.3d 654, 660 (8th Cir. 2021) (explaining that the realistic-probability test applies only when a state statute has an "indeterminate reach" (citation omitted)); *see also* Br. of Appellant 38 (describing it as a "useful interpretive rule to resolve a state statute's ambiguity"). *Compare Brown v. United States*, 929 F.3d 554, 559 (8th Cir. 2019) (adopting the same rule in an ACCA case), *with United States v. Bragg*, 44 F.4th 1067, 1076 (8th Cir. 2022) (declining to apply *Gonzalez*'s approach in a case involving ACCA's *force* clause). The definition of cocaine, as we explain above, is unambiguously broad: it reaches "*the ... isomers* of cocaine" and contains no limiting language. *See Gonzalez*, 990 F.3d at 658, 660–61 (concluding that it took no "legal imagination" to determine the reach of a Florida statute

that prohibited possession of "all parts of any [Cannabis] plant"). The "realistic probability," in other words, is "evident from the language of the statute itself," *id.* at 660, just like in *Oliver*, 987 F.3d at 806. It is not our job "to rewrite [the] statute to conform" to federal law or "a supposed practical understanding of the drug trade." *United States v. Ruth*, 966 F.3d 642, 648 (7th Cir. 2020); *see also Oliver*, 987 F.3d at 807–08 (relying on *Ruth*).

*United States v. Owen*, 51 F.4th 292, 296 (8th Cir. 2022), <u>reh'g denied,</u> No. 21-3870, 2022 WL 17840559 (8th Cir. Dec. 22, 2022).

It is noted that none of the recent Eighth Circuit cases involving ACCA serious drug offenses have required the "realistic probability" test despite the Government's insistence to the contrary.  See *Perez*, *Owen*, and *Myers*.

See also, *Brown v. United States*, 929 F.3d 554, 559  (8th Cir 219) where state burglary statute criminalized illegal entry into boats and railroad cars, a "'realistic probability' [that statute is overbroad] exists on the face of the statute itself'") "it requires no stretch of "legal imagination" to conclude that Missouri *could* have convicted someone of non-generic burglary. ... Indeed, a "realistic probability," *id.*, exists on the face of the statute itself. *Brown* at 559.

The Eighth Circuit recently found in *Myers*, "Because the text of the Missouri drug schedule plainly criminalized all isomers of cocaine, our inquiry ends there."  *United States v. Myers*, No. 21-3443, 2022 WL 17984279, at *3 (8th Cir. Dec. 29, 2022).  Similarly, as the Arkansas statute plainly criminalized Ioflupane, as well as *all* isomers of both substances, that ends the inquiry.

**The Arkansas Definition of Cocaine is Broader than the Federal Law Definition of Cocaine**

As it must, the government acknowledges the Eighth Circuit's holding in *Perez* is binding until the Eighth Circuit or the Supreme Court says otherwise. Government's response page 9 footnote 1. As the identical issue in *Perez* is present here, there should be no question that the Arkansas convictions are not proper predicates for the ACCA. In *Perez*, the Eighth Circuit found, "Because Perez's state statute of conviction included Ioflupane whereas the CSA specifically excludes Ioflupane as a controlled substance, the state statute is overbroad on its face, and our categorical analysis ends with the text of the statute. Perez's prior offenses are not serious drug offenses under the ACCA, and the district court erred by sentencing Perez as an armed career criminal."). *Perez*, 46 F.4th at 701.

In addition to the Ioflupane found fatal in *Perez*, Arkansas's definition additionally criminalizes all isomers.

Comparing Arkansas's drug schedule at the time of Mr. Lee's Arkansas conviction to the federal schedule at the time of his federal offense demonstrates that the Arkansas statute of conviction as it relates to cocaine sweeps more broadly and punishes more conduct than the federal definition.

As relevant here, Section 802 defines a "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter. § 802(6).

In 2021, Schedule II included the following cocaine-related substances:

coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed; cocaine, its salts, optical and geometric isomers, and salts of isomers; ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the[se] substances," *see* 21 U.S.C § 812(c), Schedule II(a)(4), but not ioflupane. *See* 21 C.F.R. § 1308.12(b)(4) (providing Schedule II substances include "[c]oca leaves (9040) and any salt, compound, derivative or preparation of coca leaves (including cocaine (9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include: (i) Decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine; or (ii) [$^{123}$I]Ioflupane.") (Effective Date: September 11, 2015).

In comparison, in 2018, Arkansas' Schedule II included the following

cocaine-related substances:

Coca leaves (9040) and any salt, compound, derivative, or preparation of coca leaves, (including cocaine (9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.*

*See* Ark. Admin. Code § 007.07.2, Schedule II(b)(4) (2018).

As evident, "21 U.S.C. § 812(c), Schedule II(a)(4) does not expressly

include cocaine derivatives within its definition (although it does expressly

reference ecgonine derivatives"). *United States v. House*, 31 F.4th 745, 754 (9th

Cir. 2022).  Moreover, "21 C.F.R. § 1308.12(b)(4) expressly *includes* cocaine (and

ecgonine) derivatives, but also expressly *excludes* [[123]I]ioflupane." *Id.*

On the other hand, Ark. Admin. Code § 007.07.2, Schedule II(b)(4)

expressly includes cocaine derivatives but does not expressly exclude or mention

[[123]I]Ioflupane. *See id*.

Arkansas' definition of cocaine is broader than the federal definitions of

cocaine.  *See Perez*, 46 F.4th at 701 ("Because Perez's state statute of conviction

included Ioflupane whereas the CSA specifically excludes Ioflupane as a

controlled substance, the state statute is overbroad on its face, and our categorical

analysis ends with the text of the statute.  Perez's prior offenses are not serious

drug offenses under the ACCA, and the district court erred by sentencing Perez as

an armed career criminal."); *United States v. House*, 31 F.4th 745, 754 (9th Cir.

2022) (concluding Montana's definition of cocaine is broader than the federal

definitions of cocaine because "Montana Code Annotated section 50-32-224(1)(d)

expressly includes cocaine derivatives but does not expressly exclude or mention

[[123]I]Ioflupane."); *United States v. Holliday*, 853 F. App'x 53, 54 (9th Cir. 2021)

("Montana's relevant drug schedules are 'categorically overbroad' because they

'include[] substances other than those listed in the federal [Controlled Substances

Act].' The Montana schedules include cocaine derivatives, Mont. Code Ann. § 50-

32-224(1)(d), while the federal statutory drug schedules do not, *see* 21 U.S.C. §

812(c) Schedule II(a)(4).  The Montana schedules are also overbroad when compared with the federal regulatory drug schedules. The federal regulatory schedules were recently amended to specifically exclude 'ioflupane' from the list of cocaine-related substances. 21 C.F.R. § 1308.12(b)(4). Prior to the amendment, '[123I]ioflupane was, by definition, a schedule II controlled substance because it is derived from cocaine via ecgonine, both of which are schedule II controlled substances.' Schedules of Controlled Substances: Removal of [123I]Ioflupane from Schedule II of the Controlled Substances Act, 80 Fed. Reg. 54715-01 (Sept. 11, 2015). The Montana schedules, on the other hand, include 'cocaine and ecgonine and their ... derivatives' without any exception for ioflupane. Mont. Code Ann. § 50-32-224(1)(d). Thus, § 50-32-224(1)(d)'s overbreadth 'is evident from its text.'"). *See also Owen*, 51 F.4th at 295–96 (concluding that defendant's Minnesota convictions for selling cocaine are not a serious drug offenses because the Minnesota statute criminalizes all isomers of cocaine; "Cocaine has multiple isomers.  The problem for the government is that federal law criminalizes just two: optical and geometric isomers.  Minnesota's statute, by contrast, bans them all. We have already concluded that a drug statute that criminalizes even one additional isomer does not qualify as a 'serious drug felony'.  This means that Owen's third-degree drug-sale convictions do not count as 'serious drug offense[s]' under ACCA." (internal citations omitted)).

*Oliver* also explained why an Illinois drug conviction (720 Ill. Comp Stat 570/401) failed the categorical analysis because it "is broader than the federal definition." *Id.* at 807, citing *United States v. Ruth*, 966 F.3d 642, 645-47 (7th Cir. 2020). "As the court in *Ruth* observed, *id.* at 647, section 401 criminalizes the manufacture or delivery of cocaine, but under Illinois law, cocaine includes 'optical, positional, and geometric isomers.'" *Id.*, citing 720 Ill. Comp. Stat. 570/206(b)(4) (2000). "By contrast, federal law defines cocaine to include only 'optical and geometric isomers.'" *Id;* citing 21 U.S.C. § 812, Schedule II(a)(4); *Ruth*, 966 F.3d at 647. "On its face, then, the Illinois statute is categorically broader than the federal definition." *Id.,* citing *Ruth*, 966 F.3d at 647.

As the Eight Circuit noted in *Owen*, "We have already concluded that a drug statute that criminalizes even one additional isomer does not qualify as a "serious drug felony." *United States v. Oliver*, 987 F.3d 794, 806–07 (8th Cir. 2021). It should come as no surprise that a statute that reaches even more is overbroad too. *Owen,* 51 F.4th 292, 296.

Arkansas's definition also criminalizes *all* isomers of cocaine in  Ark. Admin. Code § 007.07.2, Schedule II(b)(4) ("Coca leaves (9040) and any salt, compound, derivative, or preparation of coca leaves, (*including cocaine (9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives*) . . . ."). *See also United States v. Owen*, 51 F.4th 292, 295 (8th Cir.

2022) ("By specifically mentioning '*the . . . isomers* of cocaine,' the definition

sweeps in any substance with 'the same chemical composition' as cocaine, even if

it has a different 'structural form.'").  Whereas, "federal law criminalizes just two:

optical and geometric isomers." *Owen*, 51 F.4th at 296.

Because this Arkansas Schedule refers to isomers without qualification, it is

textually unambiguous that *all* are prohibited, including positional isomer cocaine.

*See, for example, United Sates v. De La Torre*, 940 F.3d 938, 951 (7th Cir. 2019)

(holding that "generic use of 'isomer'" means all isomers when not limited by the

Indiana statute).

Additionally, Ark. Admin. Code § 007.07.2, Schedule II(b)(4) expressly

includes cocaine and ecgonine and derivatives but does not expressly exclude or

mention [$^{123}$I]Ioflupane.

The Arkansas Supreme Court "construes the statute just as it reads, giving

the words their ordinary and usually accepted meaning in common language, and if

the language of the statute is plain and unambiguous, and conveys a clear and

definite meaning, there is no occasion to resort to rules of statutory interpretation.

Under these rules, we must first look to the plain language of the statute and only

then, if the language is ambiguous, do we resort to the rules of statutory

interpretation.  *Thompson v. State,* 2014 Ark. 413, 5, 464 S.W.3d 111, 114 (2014).

**The Government's reliance on ACA § 5-64-101(16)B is in error as it defines
the term "Narcotic Drug" not "Cocaine"**

ACA § 5-64-101(16)B  is the definition of the term "narcotic drug".  It is <u>not</u>

the definition of cocaine, nor does it define or redefine the definition of cocaine as

detailed in the Arkansas Drug Schedule.  The "Narcotic Drug" definition applies to

other violations within chapter 64 which allege the term "narcotic drug", which is

<u>not </u>at issue here.

> § 5-64-101 (16)B "***Narcotic drug" <u>also</u> means*** any of the following,
> whether produced directly or indirectly by extraction from a substance
> of vegetable origin, independently by means of chemical synthesis, or
> by a combination of extraction and chemical synthesis:
>
> **(i)**    **(a)** Opium, opiates, a derivative of opium or opiates, including
> their isomers, esters, and ethers whenever the existence of the
> isomers, esters, ethers, and salts is possible within the specific
> chemical designation.
> **(b)** "Narcotic drug" does not include an isoquinoline alkaloid of
> opium;
> **(ii)** Poppy straw and concentrate of poppy straw;
> **(iii)** Coca leaves, except coca leaves and extracts of coca leaves from
> which cocaines, ecgonine, and derivatives of ecgonine or their salts
> have been removed;
> **(iv)** Cocaine, its salts, optical and geometric isomers, and salts of
> isomers;
> **(v)** Ecgonine, its derivatives, their salts, isomers, and salts of isomers;
> or
> **vi)** Any compound, mixture, or preparation that contains any quantity
> of any substance referred to in subdivisions (16)(B)(i)-(v) of this
> section;

Defendant was convicted under ACA § 5-64-420.  Significantly, the term

"narcotic drug" is found nowhere within the defendant's statute of conviction.  The

government simply attempts to re-write the law and to sow ambiguity into the law

where it does not exist.  The definition of the term "narcotic drug"  does, however,

establishes that the Arkansas Legislature knows how to limit a substance or isomer when they choose to do so.

**The Arkansas Definition of Methamphetamine is Broader than the Federal Definition of Methamphetamine**

Defendant amends his PSR objection to include both paragraph 45 and 46 as he contests both paragraphs and convictions as they are not "serious drug offenses" and are not proper predicates for purposes of the ACCA.

21 U.S.C. § 802(14) defines the term isomer for methamphetamine to mean "optical isomer." The federal definition of isomers as it relates to methamphetamine includes only *optical* isomers. *United States v. De La Torre,* 940 F.3d 938, 951 (7th Cir. 2019).   Arkansas defines methamphetamine to include "its salts, isomers, and salts of its isomers." *Ark. Admin. Code* 007.07.2(d)(2). Arkansas law unambiguously includes *all* isomers.

The Arkansas legislature knows how to limit isomers. Directly above the subsection defining methamphetamine, Arkansas defines amphetamine as "salts, *optical* isomers, and salts of its isomers," revealing that the Arkansas legislature understands how to limit the definitions of a similar drug.  See *Ark. Admin. Code* 007.07.2(d)(2).

The Seventh Circuit concluded that that Indiana Law was unambiguous in using the term "isomer" even though the legislature did not define it.  *De la Torre*, 940 F.3d at 951 (concluding Indiana Methamphetamine offense was not a felony

drug offense because it was overbroad.). In finding that the term was unambiguous,

the Seventh Circuit concluded the '[w]hen Indiana intended to limit the specific

isomer for a drug, it expressly did so.  *Id.*  Specifically, because it limited the term

isomer in other parts of the law, this demonstrated that "[t]he Indiana legislate

know how to limit a listed drug to include on its optical isomers." *Id*   It is a

general rule of statutory construction that "when the legislature uses certain

language in one part of the statute and different language in another, the court

assumes different meanings were intended.  *United States v. De La Torre,* 940 F.3d

938, 951 (7th Cir. 2019).

The Arkansas Supreme court has held,  "we review issues of statutory

interpretation de novo, as it is for this court to decide the meaning of a

statute. *Newman v. State*, 2011 Ark. 112, 380 S.W.3d 395. Criminal statutes are

construed strictly, and any doubts are resolved in favor of the defendant. *Id.* The

primary rule of statutory interpretation is to give effect to the intent of the

legislature. *Id.* We first construe the statute just as it reads, giving the words their

ordinary and usually accepted meaning in common language; if the language of the

statute is plain and unambiguous and conveys a clear and definite meaning, there is

no occasion to resort to rules of statutory interpretation." *State v. Ledwell*, 2017

Ark. 252, 4, 526 S.W.3d 1, 3 (2017).  Additionally, the "court construes the statute

so that no word is left void, superfluous, or insignificant, and this court gives

meaning and effect to every word in the statute, if possible." *Holbrook v.*

*Healthport, Inc.,* 2014 Ark. 146, 5, 432 S.W.3d 593, 597 (2014).

This Court must interpret the text as written "for the power to redraft laws to

implement policy changes is reserved to the legislative branch.". *Matthew v.*

*Unum Life Ins. Co. of Am.,* 639 F.3d 857, 867 (8th Cir. 2011).

As the Arkansas statute is unambiguous and sweeps greater than the federal

crime, the analysis stops here.   See *Myers,* Id.

**  *Thomas* is not Eighth Circuit precedent supporting the conclusion that Arkansas methamphetamine convictions for possession with the purpose to deliver qualify for ACCA purposes.**

Defendant does not read the unpublished opinion of  *United States v.*

*Thomas*, 811 F. App'x 390 (8th Cir. 2020) as "Eighth Circuit precedent supporting

the conclusion that Arkansas methamphetamine convictions for possession with

the purpose to deliver qualify for ACCA purposes" as the government suggests.

The issue in Thomas was whether Thomas's robbery conviction qualifies as a

violent felony under the ACCA.

**Following the 8th Circuit's opinions in *Perez*,  *Owens*, and  *Myers*, the Defendant's  two Arkansas possession of methamphetamine or cocaine with the purpose to deliver convictions under ACA § 5-64-420 do not qualify as serious drug offenses.**

In *Perez,* the 8th Circuit held:

> To determine whether a prior conviction under state law qualifies as a
> serious drug offense, "we apply a categorical approach that looks to
> the statutory definition of the prior offense, not to the facts underlying

a defendant's prior convictions." <u>United States v. Oliver</u>, 987 F.3d 794, 806 (8th Cir. 2021) (quoting <u>United States v. Boleyn</u>, 929 F.3d 932, 936 (8th Cir. 2019)). We focus solely on whether the elements of the prior state offense match the federal criteria for a "serious drug offense" under the ACCA. <u>United States v. Vanoy</u>, 957 F.3d 865, 867 (8th Cir. 2020) (citing <u>Shular v. United States</u>, —— U.S. ——, 140 S. Ct. 779, 782, 206 L.Ed.2d 81 (2020)). "If the state offense sweeps more broadly, or punishes more conduct than the federal definition, the conviction does not qualify as a predicate offense." <u>Id.</u> Where a state statute is unambiguously broader than federal law, the categorical analysis ends with the text of the statutes. <u>Gonzalez v. Wilkinson</u>, 990 F.3d 654, 660–61 (8th Cir. 2021).

*United States v. Perez*, 46 F.4th 691, 698 (8th Cir. 2022).

The Eighth Circuit held in *Perez*  that because the state statute of conviction included Ioflupane, but the Controlled Substances Act excludes Ioflupane as a controlled substance, the state statute was overbroad on its face, and Perez's prior cocaine delivery convictions do not qualify as serious drug offenses under the ACCA. *Id*. at 701.

The government in short argues that *Perez* was wrongly decided by the 8th Circuit.  Again, they argue that the "modified" approach should apply, that the realistic possibility test should apply, and lastly the government argues that the Federal and Arkansas statutes are "identical," even though they are not.

21 U.S.C. § 802(14) defines the term isomer for methamphetamine to mean "optical isomer."

21 U.S.C. § 802(14) - The term "isomer" means the optical isomer, except as used in schedule I(c) and schedule II(a)(4). As used in schedule I(c), the term "isomer" means any optical, positional, or

geometric isomer. As used in schedule II(a)(4), the term "isomer" means any optical or geometric isomer.

The federal definition of isomers as it relates to methamphetamine includes only *optical* isomers. *United States v. De La Torre,* 940 F.3d 938, 951 (7th Cir. 2019).   Arkansas law unambiguously includes them all.

21 U.S.C § 812(c) defines cocaine to include, optical and geometric isomers.  Conversely, Arkansas's definition criminalizes all isomers of cocaine under Ark. Admin. Code § 007.07.2, Schedule II(b)(4), and Ark. Admin. Code § 007.07.2, Schedule II(b)(4) expressly includes cocaine derivatives but does not expressly exclude or mention [$^{123}$I]Ioflupane.

*Perez, Owens*, and  *Myers* were all recently decided.  These cases did not rely upon the "modified approach", the "realistic probability test", or view state laws as "identical" to the federal statute when the text was different.  The aforementioned Eighth Circuit cases looked to the state vs the federal definitions of the controlled substances in question, and in each case found the state law was broader than the federal statute.

**The Government's Expert Exhibit's should not be considered to determine the issues raised herein.**

The government attempts to introduce exhibits into the record from the DEA, namely a Declaration of Daniel Willenbring, Government's exhibit 4, and a

report prepared in 2015 by the DEA, Government's exhibit 5.  The government also states that it intends to submit an affidavit from the Arkansas State Crime lab.

The categorical analysis does not allow a re-examination in federal court of what Arkansas law is, or should be, by exhibits of government experts after a defendant has already been convicted of the crime in state court.

The government encourages a battle of the experts approach, which will cause courts to come to different conclusions about what cocaine or methamphetamine means in Arkansas and other states, both within this circuit and other circuits. To adopt the government's approach would encourage dueling expert witnesses to "determine" what state law is, or what they think it should be. Not only is this approach improper, but the same greatly favors the government who will always have greater access to experts than the typical indigent criminal defendant.   The only valid approach is the one required under the ACCA's categorical analysis and the Fifth and Sixth Amendments of the Constitution.

"The *Shepard* Court explained that a sentencing court could not delve beyond the facts the defendant was convicted of to 'make a disputed finding of fact' because the Constitution 'guarantee[s] a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence.'" *United States v. KT Burgee*, 988 F.3d 1054, 1059 (8th Cir. 2021), quoting *Shephard*, 544 U.S. at 25.

Three things (other than *Shephard* documents) have been repeatedly identified as tools in the categorical analysis (both by the Supreme Court and the Eighth Circuit): the statutory text, state case law, and approved jury instructions. *See United States v. Naylor*, 887 F.3d 397, 401-06 (8th Cir. 2018) (en banc); *see also in Naylor* (concluding that case law is "the best evidence available", and questioning the use of jury instructions) (Colloton, J., concurring).

"[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000); *see also Mathis*, 136 at 2252, citing *Apprendi* (allowing "a sentencing judge to go any further [in the categorical analysis] would raise serious Sixth Amendment concerns"); *see also Pereida*, 141 S.Ct. at 766 (noting that the categorical approach is "confined" in the ACCA because the Court has repeatedly "circumscribed the proof a judge may consult out of concern for the defendant's Sixth Amendment right to a Jury trial.")

The government's expert evidence/exhibits are not proper at an ACCA sentencing, because it goes *far* beyond the "fact of a prior conviction."

"Using the categorical approach, we focus *solely* on whether the elements of the crime of conviction sufficiently match the conduct of a serious drug felony."

36

*Vanoy* 957 F.3d at 865, citing *Shular*, 140 S. Ct. at 782, emphasis added. To determine whether a prior conviction qualifies as a predicate offense, the categorical approach is used to "look *only* to the fact of conviction and the statutory definition of the prior offense." *United States v. Welch*, 879 F.3d 324, 326 (8th Cir. 2018), quoting *United States v. Headbird,* 832 F.3d 844, 846 (8th Cir. 2016), emphasis added.

The government incorrectly suggests that federal sentencing courts may somehow re-consider or re-define what Arkansas law is, or what it should be, under the categorical analysis based upon exhibits from government experts.

The reasons why expert evidence is not allowed at an ACCA sentencing hearing have been repeatedly explained by the Supreme Court. If the issue is one of fact that the government needs expert testimony on, then the government is doing precisely what it may not under the categorical analysis, and the Fifth and Sixth Amendments. "The key [under ACCA] is elements, not facts." *Descamps v. United States*, 133 S.Ct. 2276, 2283 (2013); *see also Mathis*, 136 S.Ct. at 2252 (allowing "a sentencing judge to go any further [in the categorical analysis] would raise serious Sixth Amendment concerns").

The Seventh Circuit has twice rejected similar expert testimony where "the government offers theoretical challenges to positional isomers of cocaine but cannot avoid the inescapable conclusion that the plain language of the state statute

categorically covers a larger swath of conduct than its federal counterpart." *Ruth*, 966 F.3d at 648; *De La Torre*, 940 F.3d at 952. "[W]e compare the state statute to the federal recidivism statute at issue and ask only if the state law is the same as or narrower than federal law." *Ruth*, 966 F.3d at 648.

The Seventh Circuit explained this expert testimony is unhelpful because it "does not actually aver that positional isomers of cocaine do not exist." *Ruth*, 966 F.3d at 648. "And that is an important distinction. It is not the province of the judiciary to rewrite Illinois's statute to conform to a supposed practical understanding of the drug trade." *Id*. "We must give effect to the law as written." *Id*.

Similar expert evidence and arguments were also submitted by the government in the recent case of *Myers* and rejected by the Eighth Circuit.

> The government also raises arguments about the non-existence of positional isomers in the drug trade, such that Missouri would have no reason to criminalize them, and about Missouri's summary rulemaking process, which was designed to conform the Missouri schedules to the federal schedules. But absent ambiguity, we are "bound to give effect to the intent reflected in the statute's plain language and cannot resort to other means of interpretation." <u>Karney v. Dep't of Lab. & Indus. Rels.</u>, 599 S.W.3d 157, 162 (Mo. banc 2020); <u>see also</u> <u>Owen</u>, 51 F.4th at 296. Because the text of the Missouri drug schedule plainly criminalized all isomers of cocaine, our inquiry ends there.

> *United States v. Myers*, No. 21-3443, 2022 WL 17984279, at *3 (8th Cir. Dec. 29, 2022)

**Post-*Perez*, ACA § 5-64-420 does not qualify as serious drug offenses**

The government argues that "*Perez* is distinguishable because the Arkansas law in effect at the time of conviction did not consider [$^{123}$I]Ioflupane as a controlled substance, …." However, the government's conclusion is not what *Curry v. State*, 279 Ark. 153 (1983) held.  *Curry* involved methaqualone and an act was repealed back in 1979.  What Curry does stand for is the proposition that the authority to define crimes and fix the punishment for those crimes is vested exclusively in the legislative branch of government, and if an act is incomplete and authorizes a commission to decide what shall and what shall not be a violation of the law it will be held unconstitutional as an improper delegation of legislative authority.  *Curry v. State*, 279 Ark. 153, 156, 649 S.W.2d 833, 835 (1983).

[$^{123}$I]Ioflupane was previously within the federal Schedule II controlled substance definition because it is derived from cocaine via ecgonine, and federal law included cocaine and ecgonine and their derivatives.  In 2015, the DEA expressly excluded  [$^{123}$I]Ioflupane  from the federal definition.

Arkansas law also includes cocaine and ecgonine and their derivatives in it's definition of cocaine.  Therefore, '[$^{123}$I]Ioflupane, by definition, is included within Arkansas's definition because it is derived from cocaine via ecgonine.  However, unlike the federal government, Arkansas did <u>not</u> later choose to expressly exclude [$^{123}$I]Ioflupane from it's Schedule II definition of cocaine. Thus, is it clear from a

plain reading of the Arkansas definition, that because [$^{123}$I]Ioflupane is not expressly excluded, it remains a controlled substance under Arkansas state law.

While the government concedes that Arkansas's law includes cocaine and ecgonine and derivatives, (i.e. [$^{123}$I]Ioflupane);  they argue, "nevertheless, the United States contends that the appropriate interpretation of Arkansas law, … is that [$^{123}$I]Ioflupane is not and has never been a controlled substance under Arkansas law".  Government's response page 21.

The government seems to urge this Court to misinterpret Arkansas Law, or ignore 8th circuit precedent, or incorrectly apply the realistic probability test, because, …  "any finding to the contrary would mean that no Arkansas cocaine delivery or possession with intent to deliver convictions qualify for recidivism enhancements under the ACCA."  Governments response page 22.  However, that is simply not true with regard [$^{123}$I]Ioflupane, it would only apply to the period of since *their* agent changed federal law which is after September 11, 2015.  The larger problem for the government stems from *all* isomers of both methamphetamine and cocaine also being illegal under Arkansas law, which they attempt to dodge by asserting (1) that the texts are "identical", when they are not, (2) attempting to sow ambiguity where none exists by citing definitions that do not apply, (3) simply suggesting "it ain't so" or (4) attempting to shift the burden to the defendant under the realistic probability test that does not apply.

Moreover, as noted by the Court in Ruth, "It is not our job "to rewrite [the] statute to conform" to federal law or "a supposed practical understanding of the drug trade." *United States v. Ruth*, 966 F.3d 642, 648 (7th Cir. 2020);

**The remainder of the government arguments.**

The government generally addressed it's arguments in terms of all drug trafficking, delivery, and possession with intent to deliver charges under Arkansas law pertaining to cocaine and methamphetamine.  As the issue before this Court deals only with convictions under ACA § 5-64-420 for Possession of a Controlled substance with Purpose to Deliver.   Defendant does not address other Arkansas Delivery and Trafficking statutes as the same are not at issue and are irrelevant.

**If the Court determines that the ACCA does not apply, should it determine that the offenses are controlled substance offenses under USSG § 2K2.1?**

Defendant amends his objection to contests both of his controlled substance convictions to enhance his sentence under USSG § 2K2.1.

Defendant acknowledges the 8th Circuit's ruling in *Perez*. However, is *Perez* distinguishable as it was a plain error review and the convictions were uncontested. Both *Perez* and *Henderson* argued on appeal that their convictions should not apply because they were an inchoate controlled substance offenses.  See also, *United States v. Henderson*, 11 F.4th 713, 716 (8th Cir. 2021), cert. denied, 212 L. Ed. 2d 594, 142 S. Ct. 1696 (2022).

Three circuit courts have held that the federal Controlled Substances Act (CSA), 21 U.S.C. § 801 et seq., must provide the definition. *See United States v. Bautista*, 989 F.3d 698, 702 (9th Cir. 2021); *United States v. Townsend*, 897 F.3d 66, 68, 71 (2d Cir. 2018); *United States v. Gomez-Alvarez*, 781 F.3d 787, 793-94 (5th Cir. 2015). Three other circuits have held that, where a prior conviction is handed down in state court, a substance criminalized under that state's laws is a "controlled substance" under the Guidelines, even if absent from the federal CSA. *See  United States v. Ward,* 972 F.3d 364, 371–72 (4th Cir. 2020); *United States v. Ruth*, 966 F.3d 642, 654 (7th Cir. 2020), And Henderson.

Defendant submits that if the offense is not a controlled substance offense or if it based upon a broader definition of a controlled substance than under the Controlled Substance Act, it should not apply.   As the purpose of the federal sentencing guidelines is to promote fairness and uniformity in sentencing, it would seem contrary to its very purpose to vary between each state depending upon each state's definition of a controlled substance offense.

USSG § 2k2.2(a)(2) provides an increased offense level of 24, if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense.  However, if a state offense is found by the federal courts not to be a crime of violence, would it not be illogical and in violation of a defendant's due process,

Fifth and Sixth Amendment constitutional rights to nevertheless increase his penalty range due to a crime of violence, that in truth, is not a crime of violence under federal law.

Due to the split in the circuits regarding this issue, defendant asserts his objection to the convictions and the issue.

WHEREFORE, defendant requests that the Court grant his objections to the PSR, find that paragraphs 45 and 46 are both based upon convictions under ACA § 5-64-420 which is overly broad, is not properly divisible, and the same cannot serve as a proper predicate for ACCA for either cocaine or methamphetamine, consider a downward variance and/or departure, and impose a non-guideline sentence.

Respectfully submitted,


Leslie Borgognoni
ABN 85013
Attorney for Defendant  Lee
424 E. 6th Street
Little Rock, AR 72202
 (501) 371-0310
lborgognoni@sbcglobal.net